UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KOMATSU AMERICA CORP. and
KABUSHIKI KAISHA KOMATSU
SEISAKUSHO,

        Plaintiffs,

v.

FRANK EUSEBIO, BRYJUS
ENTERPRISES LLC and
KOMATSUPART, LLC

        Defendants.

Case No: 8:21-cv-2512-KKM-TGW

## REPORT AND RECOMMENDATION

The plaintiffs filed a Motion for Entry of Final Default Judgment Against All Defendants (Doc. 30) and a Motion for Final Default Judgment Against Defendant Frank Eusebio (Doc. 45). They seek a permanent injunction against the defendants, enjoining their unauthorized use of the plaintiffs' KOMATSU mark. The defendants failed to defend this case, and defaults were entered against them.

The well-pled complaint allegations and evidence establish the plaintiffs' claims and that permanent injunctive relief is warranted. I therefore

recommend that Motion for Entry of Final Default Judgment Against All Defendants (Doc. 30) be granted as to the corporate defendants, and the Motion for Entry of Final Default Judgment Against Defendant Frank Eusebio (Doc. 45) be granted.

I.

Plaintiff Kabushiki Kaisha Komatsu Seisakusho (Komatsu Limited) is a worldwide equipment and distribution company which, along with plaintiff licensee Komatsu America Corp. (collectively Komatsu), markets and sells construction, mining, utility, and related equipment and services under the KOMATSU mark and multiple KOMATSU-formative marks (Doc. 1, ¶1). Komatsu Limited owns several valid trademark registrations for the marks, including KOMATSU, KOMATSU REMARKETING, and KOMATSU CARE (id., ¶¶28, 29; Doc. 1-2).

Komatsu first used the KOMATSU mark in interstate commerce in August 1969 (id.). Komatsu markets and sells Komatsu's products under the KOMATSU marks throughout the United States via distributors and the Internet, including on its website accessible at www.komatsu.com and www.komatsuamerica.com, and several social media platforms (id., ¶¶21-23). Komatsu prominently and extensively uses the KOMATSU marks directly on

Komatsu's products, and in nationwide advertising and promotional materials for the products, including print advertisements, brochures and the internet (id., ¶25).

Komatsu has invested extraordinary resources developing, advertising, promoting and marketing Komatsu's products under the KOMATSU marks throughout the United States (id., ¶24). Consequently, Komatsu has developed and maintained a national reputation for high quality construction, mining, utility and related equipment and services (id., ¶18).

The defendants operate their businesses under the names "Komatsu Part" and "My Komatsu Parts" (id., ¶2). They market and sell various infringing goods under the KOMATSU mark that they promote as "Certified Premium Komatsu Parts" and/or "Certified Premium Komatsu Replacement parts" (id., ¶32). The plaintiffs, however, never authorized, licensed or otherwise endorsed the defendants' products or their use of the Komatsu marks (id., ¶41). Komatsu also has never been affiliated with them (id., ¶42).

The defendants market products through their website accessible at the domain names "komatsupart.com"; "mykmparts.com"; "mykomatsuparts.com" and "mykomatsupart.com," as well as on social media websites (id., ¶¶2, 33). The complaint includes screenshots from the defendants' website and social media pages that prominently feature the KOMATSU mark

3

(see id., ¶33). The defendants' website and social media also use a blue and yellow color scheme that is nearly identical to the plaintiffs' color scheme on the plaintiffs' Komatsu website (id., ¶34).

Despite Komatsu's demand that the defendants cease all infringing use of the KOMATSU marks, they continued and escalated their unauthorized and infringing use of the KOMATSU mark (id., ¶3).

In October 2021, the plaintiffs filed this lawsuit, alleging against the defendants (1) trademark infringement of registered trademarks under section 1114 of the Lanham Act; (2) unfair competition, false designation of origin, and false advertising under section 1125(a) of the Lanham Act; (3) trademark dilution by blurring and tarnishment under section 1125(c) of the Lanham Act; (4) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and (5) common law unfair competition (Doc. 1). They request the entry of a permanent injunction against the defendants' use of the KOMATSU and KOMATSU-formative marks.

On October 27, 2021, the plaintiffs served defendants Bryjus Enterprises, LLC and Komatsupart, LLC, with a summons and copy of the complaint (Docs. 14-16). Neither defendant filed a response to the complaint as required by Rule 12, F.R.Civ. P. Therefore, upon the plaintiffs' motion, the

4

Clerk of Court entered defaults against them (Docs. 17-20).

On December 16, 2021, the plaintiffs served Frank Eusebio with a summons and copy of the complaint (Doc. 23). Eusebio failed to file a response to the complaint as required by Rule 12, F.R.Civ. P. Therefore, upon the plaintiffs' motion, the Clerk of Court entered default against Eusebio (Docs. 25, 27). However, in February 2022, Eusebio filed a notice of appearance to appear pro se (Doc. 31). The court then directed Eusebio to file a Motion to Set Aside the default against him (Doc. 32), which he did (Doc. 35). The court granted that motion and directed Eusebio to respond to the complaint by March 25, 2022 (Doc. 36). Eusebio did not do so, and he defaulted again (Docs. 42, 44).

Before Eusebio's initial default was vacated, the plaintiffs filed a Motion for Default Judgment against all the defendants (Doc. 30). The plaintiffs certified that the defendants were served by U.S. mail at their last known addresses (Doc. 43).

Following Eusebio's second default, the plaintiffs filed a second Motion for Entry of Final Default Judgment against Eusebio (Doc. 45). The plaintiffs certified that this motion was also served upon Eusebio by U.S. Mail (id.).

None of the defendants submitted an answer to the complaint or filed

a memorandum in opposition to the motions for default judgment.

II.

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Rule 55(b)(2), F.R. Civ. P.; DirecTV, Inc. v. Griffin, 290 F.Supp. 2d 1340, 1343 (M.D. Fla. 2003). By defaulting, the defendants are deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). As discussed below, the allegations in the complaint and the exhibits attached thereto (Doc. 1) satisfy the elements of each of the plaintiffs' five claims against the defendants.

III.

The plaintiffs allege that the defendants' use of the KOMATSU trademarks constitutes trademark infringement in violation of the Lanham Act (Doc. 1). In order to prevail on the claim of trademark infringement, a plaintiff must establish: (1) that it possessed a valid mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale ... or advertising of any goods"; and (5) that the defendant used the mark in a manner likely to confuse

consumers. <u>North American Medical Corp.</u> v. <u>Axiom Worldwide, Inc.</u>, 522 F.3d 1211, 1218 (11th Cir. 2008).

The plaintiffs have established that they possess valid KOMATSU marks by identifying the registration numbers of each mark and providing copies of the marks from the U.S. Patent and Trademark Office (Doc. 1-2). 15 U.S.C. 1115(a).

Furthermore, the evidence clearly establishes that the defendants adopted the KOMATSU mark as an element of their names under which they conduct business. Thus, they market and sell products under the Komatsu mark—i.e., "Certified Premium Komatsu Parts" and/or "Certified Premium Komatsu Replacement parts"—on a website that incorporates the Komatsu mark in its domain names (Doc. 1, ¶¶32-36). See <u>Buchanan</u> v. <u>Bowman</u>, 820 F.2d 359, 361 (11th Cir. 1987) (by defaulting, the defendant is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact" for purposes of liability).

Finally, the plaintiffs' well-pled allegations establish a likelihood of confusion. "[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion." <u>Custom Mfg. and Engineering</u>

7

Inc. v. Midway, 508 F.3d 641, 647 (11th Cir. 2007).

The following factors are relevant in determining whether there is a likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion. All. Metals, Inc., of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000).

The KOMATSU mark is strong. The KOMATSU mark has been used in the United States in connection with Komatsu's construction, mining and related goods continuously for over 50 years (Doc. 1, ¶20). Komatsu has invested extraordinary resources developing, advertising, promoting and marketing Komatsu's products, and the KOMATSU mark is prominently and extensively used directly on their products and in its nationwide advertising and promotional materials (id., ¶¶24, 25). Consequently, the KOMATSU mark has become a symbol of the high quality of the goods bearing the marks (id., ¶26).

Furthermore, the similarity between the parties' use of the plaintiffs' KOMATSU mark is strong. Thus, the defendants sell the same type of products as the plaintiffs, and the defendants incorporate the KOMATSU mark in promoting their goods as "Certified Premium Komatsu Parts" and "Certified Premium Komatsu Replacement parts" (id., ¶¶33-36, 38).

Additionally, the defendants market and sell their products to the same classes of consumers and in the same trade channels as Komatsu (id., ¶39). Moreover, the defendants' intent seems to be to take advantage of the plaintiffs' marks. Therefore, the likelihood that a consumer would erroneously conclude that the defendants' business is affiliated with Komatsu is strong. See Alliance Metals. Inc., of Atlanta v. Hinely Industries. Inc., supra, 222 F.3d at 907. Accordingly, the plaintiffs have established that default judgment against the defendants on their trademark infringement claim is warranted.

IV.

The plaintiffs assert several other claims in their complaint arising from the defendants' unauthorized use of their marks. As the plaintiffs correctly assert, the factual allegations outlined above also establish: (1) false designation of origin and unfair competition under the Lanham Act, Babbit Electronics. Inc. v. Dynascan Corp., 38 F.3d 1161, 1181 (11th Cir.1994) (facts enabling a party to

prevail under § 1114(a)(1) will result in recovery pursuant to § 1125); (2) the FDUTPA claim, Suntree Technologies, Inc. v. Ecosense International, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012) ( "[T]he legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act."); and (3) common law unfair competition. Id. ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").

Furthermore, the complaint contains sufficient factual allegations to prove the plaintiffs' false advertising claim.

> To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004). Here, the plaintiffs allege that the defendants describe the products they offer for sale through their website as "Certified Premium Komatsu Parts" and/or "Certified Premium Komatsu Replacement parts," despite never receiving the plaintiffs'

10

authorization or certification of any products (Doc. 1, ¶37). The false and misleading statements, furthermore, will likely influence consumers purchasing decisions, and have caused and continue to cause harm to the plaintiffs (id., ¶45). Therefore, the plaintiffs established their false advertising claim under §43(a)(1)(B) of the Lanham Act.

Finally, the plaintiffs' claim of trademark dilution requires the plaintiffs to demonstrate that their mark is famous, that the defendants used the mark in commerce after the plaintiffs' mark became famous, and that such use has likely caused dilution. Bentley Motors Corp. v. McEntegart, 976 F. Supp. 2d 1297, 1312–13 (M.D. Fla. 2013) (citation omitted). Komatsu alleges that their longstanding use of the KOMATSU mark and extensive investment in the marks, as well as widespread publicity and recognition, shows that the mark has become famous (Doc. 1, ¶¶18-27). Furthermore, the defendants subsequently adopted and used the KOMATSU mark in commerce without the plaintiffs' authorization (id., ¶¶32-35). The plaintiffs contend that the defendants' unauthorized use has likely caused dilution because it lessens the capacity of the mark to identify and distinguish the goods and services offered by the plaintiffs under the KOMATSU mark, and by tarnishing the reputation of the KOMATSU mark and the plaintiffs

(id., ¶46). These allegations are sufficient to establish the plaintiffs' federal trademark dilution claim.

In sum, the plaintiffs have also established that the defendants violated the federal and Florida laws alleged in counts II-V of the complaint.

IV.

Komatsu seeks as relief for the defendants' unlawful conduct the entry of a permanent injunction precluding the defendants from using its KOMATSU marks and unlawfully competing against it. They do not request an award of damages or attorney's fees.

"Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark...." Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1242 (11th Cir. 2008). A plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. Angel Flight of Ga., Inc. v. Angel Flight America. Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

Komatsu's uncontroverted allegations show that the defendants' unauthorized use of its marks presents a clear threat of irreparable harm to the plaintiffs' business and goodwill. Therefore, it is clear that, absent this injunction, the defendants are liable to continue to infringe the plaintiffs' marks.

Furthermore, the plaintiffs have no adequate remedy at law in this situation. Money damages cannot fully compensate them for the harm caused by defendants' unauthorized use of the KOMATSU mark and the resulting harm to Komatsu's goodwill and reputation in the marketplace. Thus, this type of harm is almost impossible to quantify and to remedy absent injunctive relief. As the Eleventh Circuit has stated:

> "[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.1988) (citation omitted). A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm.

Ferrellgas Partners, L.P. v. Barrow, 143 Fed. Appx. 180, 190–91 (11th Cir. 2005).

The last two factors, the balance of hardships between the plaintiffs

13

and defendants, and the public interest, clearly favor the entry of a permanent injunction. As discussed above, the absence of an injunction is clearly a hardship on the plaintiffs. The defendants, on the other hand, have not presented any basis upon which to conclude that the balance of hardships favors them. Moreover, the defendants will not be legitimately harmed by the entry of a permanent injunction. See Clayton v. Howard Johnson Franchise Systems, Inc., 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988) (The defendants do not suffer legitimate harm from entry of an injunction that prevents them from using marks which they are not entitled to use.).

Finally, a permanent injunction would affirmatively serve the public interest insofar as it protects consumers from being misled and ceases allegedly infringing conduct. See Sundor Brands, Inc. v. Borden, Inc., 653 F. Supp. 86, 93 (M.D. Fla. 1986) ("[W]hen a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation."). Because consumers are being deceived by the defendants' unauthorized use of the KOMATSU marks and misleading and deceptive advertising and conduct, the public interest strongly favors entry of a permanent injunction.

Therefore, the plaintiff has satisfied the four prerequisites for the imposition of a permanent injunction. See Angel Flight of Ga., Inc. v. Angel Flight America. Inc., supra, 522 F.3d at 1208.

VI.

Pursuant to Rule 65(d)(1)(C), F.R.Civ.P., "[e]very order granting an injunction must ... describe in reasonable detail ... the act or acts restrained or required." The plaintiffs set forth in their motions proposed language for the permanent injunction (Docs. 30, 45, pp. 21-22). The entry of a permanent injunction, and the language thereof, is unchallenged by the defendants.

Therefore, I recommend the entry of a permanent injunction which enjoins the defendants, their owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of the defendants, from:

- Using the plaintiffs' KOMATSU marks, including all formative variations, or any other names, marks, slogans that are likely to cause confusion, mistake or deception with Komatsu's marks;

- Engaging in any other act causing or likely to induce the mistaken belief that the defendants or the defendants' products are in any way affiliated,

connected, or associated with the plaintiffs or their goods and services, or actions likely to cause confusion with the plaintiffs' marks;

- Trading on the goodwill associated with the plaintiffs' KOMATSU marks and passing off their services as those of, or authorized or approved by the plaintiffs;

- Injuring the plaintiffs' business reputations and the goodwill associated with the plaintiffs' KOMATSU marks and from unfairly competing with the plaintiffs in any manner whatsoever; and

- Marketing, rendering, selling or transporting any goods or services that bear the plaintiffs' KOMATSU marks, or any images, symbols or trademarks confusingly similar to the marks, including but not limited to displaying promotional and marketing material on outlets such as websites, social media platforms, and other sources available over the internet.

Lastly, the plaintiffs request that the defendants be required to deliver for destruction all materials, including but not limited to, labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs and all other matter in the custody or under the control of the defendants bearing and/or displaying the plaintiffs' KOMATSU marks or any confusingly similar packaging or marks (id., pp. 22-23). They are entitled to that relief under 15

16

U.S.C. 1118.

VI.

For the foregoing reasons, I recommend that the Motion for Entry of Final Default Judgment Against All Defendants (Doc. 30) be granted as to the corporate defendants and that the Motion for Final Default Judgment Against Defendant Frank Eusebio (Doc. 45) be granted, and that the plaintiffs' proposed permanent injunction (supra, ¶V) be entered. Finally, it is appropriate to order the defendants to deliver to the plaintiffs for destruction the materials outlined above.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: ___July 29___, 2022.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.